1
2
3
4
5
6
7
8
9
10
11
12
13

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

UNITED STATES OF AMERICA,

       Plaintiff,

   v.

VIRGIL LARONE HILEY,

       Defendant.

No.  EDCR 09-00121(B) CBM

**AMENDED ORDER GRANTING DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL AND MOTION FOR NEW TRIAL**

    The matter before the Court is Defendant Virgil Larone Hiley's Motion for Judgment of Acquittal or, in the Alternative, New Trial.  [Docket No. 262.][1]

---
[1] The Court previously issued an Order Granting Defendant's Motion for Judgment of Acquittal and Motion for New Trial on July 23, 2012.  [*See* Docket No. 283].  The Court now amends its previous order to cite some additional case law.  However, the Court's final ruling remains the same.

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Defendant Virgil Larone Hiley ("Mr. Hiley") was charged with two counts of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B), possession with intent to distribute a controlled substance.  (Defendant's Motion for Judgment of Acquittal or, in the Alternative, New Trial ("Def.'s Mot.") at 3:8-9.)  Count One involved over twenty-eight grams of cocaine base in the form of crack cocaine, and Count Two involved over five grams of methamphetamine.  Def.'s Mot. at 3:9-11.  Mr. Hiley was also charged with one count of violating 21 U.S.C. § 924c, possession of a firearm in furtherance of a drug trafficking crime.  *Id.* at 3:11-13.  Lastly, Mr. Hiley was charged with one count of violating 18 U.S.C. § 922g for being a felon in possession of ammunition.  *Id.* at 3:13-14.

Mr. Hiley's trial began on January 10, 2012.  *See* Docket No. 242.  Mr. Hiley moved for a judgment of acquittal on all counts at the conclusion of the Government's case-in-chief on January 17, 2012.  Tr. Jan. 17, 2012, at 140:24-143:1.  This Court denied the motion, and the defense proceeded to present its case.  Tr. Jan. 17, 2012, at 146:8-11.  Mr. Hiley's renewed motion for judgment of acquittal and motion for new trial was timely filed on March 19, 2012.  *See* Docket No. 262.  The parties do not dispute that these motions were timely filed.

Mr. Hiley now renews his motion for a judgment of acquittal made at the conclusion of the Government's case-in-chief pursuant to Rule 29 of the Federal Rules of Criminal Procedure.  In the alternative, Mr. Hiley also moves this Court for a new trial pursuant to Rule 33 of the Federal Rule of Criminal Procedure.

**STANDARD OF LAW**

**I.    Federal Rule of Criminal Procedure 29 – Motion for Judgment of Acquittal**

Rule 29 of the Federal Rules of Criminal Procedure governs motions for a judgment of acquittal.  Rule 29 states, in pertinent part, that "[a] defendant may

1  move for a judgment of acquittal, or renew such a motion, within 14 days after a

2  guilty verdict or after the court discharges the jury, whichever is later.  […]  If the

3  jury has returned a guilty verdict, the court may set aside the verdict and enter an

4  acquittal.  […]  A defendant is not required to move for a judgment of acquittal

5  before the court submits the case to the jury as a prerequisite for making such a

6  motion after jury discharge."  Fed. R. Crim. P. 29(c)(1)-(3).  In addition, "[i]f the

7  court enters a judgment of acquittal after a guilty verdict, the court must also

8  conditionally determine whether any motion for a new trial should be granted if

9  the judgment of acquittal is later vacated or reversed.  The court must specify the

10  reasons for that determination.  […]  The court's order conditionally granting a

11  motion for a new trial does not affect the finality of the judgment of acquittal."

12  Fed. R. Crim. P. 29(d)(1)-(2).

13       The test for a judgment on acquittal is a question of the sufficiency of the

14  evidence presented at trial.  The Ninth Circuit requires that the court engage in a

15  two-step analysis:

16       Evidence is sufficient to support a conviction unless, viewing the
17       evidence in the light most favorable to sustaining the verdict, no
         rational trier of fact could have found the essential elements of the
18       crime beyond a reasonable doubt.

19  *United States v. Overton*, 573 F.3d 679, 685 (9th Cir. 2009).

20       The court must then determine whether based on that evidence, any rational

21  juror could have found the essential elements of the crime beyond a reasonable

22  doubt.  *See United States v. Nevils*, 598 F.3d 1158, 1161 (9th Cir. 2010).

23       Evidence is insufficient to sustain a conviction when, viewed in the
24       light most favorable to the prosecution, it is 'so supportive of
         innocence that no rational juror could conclude that the
25       government proved its case beyond a reasonable doubt,' or 'where
         mere speculation, rather than reasonable inference, supports the
26       government's case.'

27  *United States v. Shetler*, 665 F.3d 1150, 1163 (9th Cir. 2011) (quoting *United*

28  *States v. Nevils,* 598 F.3d 1158, 1167 (9th Cir. 2010)).

1    "The hurdle to overturn a jury's conviction based on a sufficiency of the

2    evidence challenge is high." *United States v. Rocha*, 598 F.3d 1144, 1153 (9th

3    Cir. 2010). The court must decide "whether the evidence and all reasonable

4    inferences which may be drawn from it, when viewed in light most favorable to

5    the government, sustain the verdict." *United States v. Terry*, 911 F.2d 272, 278

6    (9th Cir. 1990). Any "[c]onflicting evidence is to be resolved in favor of the jury

7    verdict." *United States v. Corona-Verbera*, 509 F.3d 1105, 1117 (9th Cir. 2007).

8    This is because it is "the responsibility of the trier of fact fairly to resolve conflicts

9    in the testimony, to weigh the evidence, and to draw reasonable inferences from

10   basic facts to ultimate facts." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

11   "[E]vidence is sufficient to support a conviction so long as 'after viewing the

12   evidence in the light most favorable to the prosecution, any rational trier of fact

13   could have found the essential elements of the crime beyond a reasonable doubt.'"

14   *Cavazos v. Smith*, 132 S.Ct. 2, 6 (2011) (quoting *Jackson v. Virginia*, 443 U.S.

15   307, 319 (1979)).

16          The court must determine "whether at the time of the motion there was

17   relevant evidence from which the jury could reasonably find [the defendant] guilty

18   beyond a reasonable doubt, viewing the evidence in light favorable to the

19   Government." *United States v. Figueroa-Paz*, 468 F.2d 1055, 1058 (9th Cir.

20   1972) (citing *United States v. Nelson*, 419 F.2d 1237, 1241-45 (9th Cir. 1969)).

21   "A defendant waives his objection to the trial court's denial of a motion for

22   acquittal made at the close of the government's case if he elects to present

23   evidence on his own behalf." *United States v. Alexander*, 48 F.3d 1477, 1490 n.10

24   (9th Cir. 1995) (quoting *Figueroa-Paz*, 468 F.2d at 1058). "On a review of a

25   renewed motion for acquittal made at the conclusion of the defendant's case, all

26   the evidence – including the evidence presented by the defendant – *can* be

27   considered." *United States v. Alexander*, 48 F.3d 1477, 1490 n.10 (9th Cir. 1995)

28

4

1   (emphasis added); *but see United States v. Davis*, 562 F.2d 681, 684 (D.C. Cir.

2   1977) ("The court must [] consider only the evidence as it was when the

3   Government rested.")

4   **II.     Federal Rule of Criminal Procedure 33 – Motion for New Trial**

5        Rule 33 of the Federal Rules of Criminal Procedure governs motions for a

6   new trial.  Rule 33 states, in pertinent part, that "[u]pon the defendant's motion,

7   the court may vacate any judgment and grant a new trial if the interest of justice so

8   requires."  Fed. R. Crim. P. 33(a).  Because a verdict is presumptively valid, the

9   Ninth Circuit has stated that a motion for new trial pursuant to Rule 33 "should be

10  granted only in exceptional cases in which the evidence preponderates heavily

11  against the verdict."  *United States v. Pimentel*, 654 F.2d 538, 545 (9th Cir. 1981)

12  (internal quotation omitted).  A motion for a new trial should only be granted

13  where "the evidence preponderates sufficiently heavily against the verdict," such

14  that "a serious miscarriage of justice may have occurred."  *United States v.*

15  *Kellington*, 217 F.3d 1084, 1097 (9th Cir. 2000) (quoting *United States v. A.*

16  *Lanoy Alston, D.M.D., P.C.*, 974 F.2d 1206, 1211 (9th Cir. 1992).

17                                 **DISCUSSION**

18  **I.     Did the government fail to present sufficient evidence on Count One**

19  **        and Count Two to sustain the jury's guilty verdict?**

20       The elements that the Government had to prove beyond a reasonable doubt

21  for Count One and Count Two are identical other than the type of drug and the

22  quantity of the drug, namely, over twenty-eight grams of cocaine base for Count

23  One and over five grams of methamphetamine for Count Two.  Def.'s Mot. at

24  5:25-6:2.  Evidence purported to be connected with the commission of a crime

25  requires that the proponent of the evidence establish the chain of custody.  *See*

26  *Gallego v. United States*, 276 F.2d 914, 916 (9th Cir. 1960).  The chain of custody

27  requires that the Government introduce "sufficient proof so that a reasonable juror

28

could find that the items [seized] are in substantially the same condition as when they were seized." *See United States v. Harrington*, 923 F.2d 1371, 1374 (9th Cir. 1991) (internal quotations omitted).

Mr. Hiley argues that the evidence introduced during the Government's case-in-chief was insufficient to establish what substances were seized from motel room 224 of the Knights Inn Motel on August 1, 2008, the date that Mr. Hiley was arrested. Def.'s Mot. at 6:7-8. Mr. Hiley further argues that, if the substances seized from room 224 were in fact controlled substances, the evidence introduced at trial was still insufficient to establish the quantities that were found in room 224. *Id.* at 6:8-9. Specifically, Mr. Hiley argues that the lab technicians could not identify the writing on the drug exhibit envelopes or anything else concerning the amount or condition of the substances except how and when they received them. Def.'s Mot. at 6:22-24; *see also* Tr. Jan. 13, 2012, at 189:12-21. For example, Officer Anthony White testified that, although "he recovered the majority of the evidence," Officer Gerald Beall was the "primary" officer in charge of securing the evidence from room 224. Tr. Jan. 13, 2012, at 35:16-19. However, Officer Beall was not called to testify at the trial.

The Government counters that, to be admitted into evidence, a physical exhibit must be in substantially the same condition as when the crime was committed. Therefore, the court may admit the evidence if there is a "reasonable probability the article has not been changed in important respects." *United States v. Harrington*, 923 F.2d 1371, 1374 (9th Cir. 1991) (quoting *Gallego v. United States*, 276 F.2d 914, 917 (9th Cir. 1960)). The Government also argues that it does not need to establish all of the links in the chain of custody of an item, or call all persons who were in a position to come into contact with it. *Reyes v. United States*, 383 F.2d 734, 734 (9th Cir. 1967); *Gallego*, 276 F.2d at 917. Alleged gaps in the chain of custody go to the weight of the evidence, rather than to its

admissibility.  *United States v. Matta-Ballesteros*, 71 F.3d 754, 769 (9th Cir. 1995).

Here, the Government called Officer White to testify, the officer who discovered the drugs found in the drawer of the nightstand during the search of room 224.  Tr. Jan. 12, 2012, at 213:11-214:16.  Officer White testified that there were "seven pieces of individually wrapped off-white solid substance"; "a plastic baggie" containing approximately "67 individual baggies of an off-white solid substance"; "a sandwich baggie containing a clear crystalline substance"; "a baggie containing a green leafy-like material"; and "approximately, $1,555 U.S. currency" found in the drawer.  *Id.; see also* Tr. Jan. 13, 2012, at 63:7-64:11. Officer White also testified that there was "a glass plate with an off-white solid substance" on the shelf of the nightstand, which was not in plain view.  Tr. Jan. 12, 2012, at 216:8-12; *see also* Tr. Jan. 13, 2012, at 61:5-25.  Officer White also took several photographs of the items contained in the drawer on August 1, 2008, which were admitted into evidence during trial.  Officer White also testified that he listed the items that were seized from room 224 on a "search warrant receipt," which was admitted into evidence during trial.  Tr. Jan. 13, 2012, at 35:12-37:12.

Officer White also testified about the manner in which San Bernardino Police Department officers mark drug evidence when it is seized in a search.  Tr. Jan. 13, 2012, at 8:23-10:19.  Specifically, Officer White testified that the drugs are placed into an envelope, or individual envelopes, if there are multiple items. Tr. Jan. 13, 2012, at 9:4-9.  The individual envelopes are then placed into a larger envelope.  *Id.*  The larger envelope is then sealed, a barcode label is placed on it. *Id.*  The label displays the agency and date.  *Id.*  Officer White also identified the various labels, bar codes, and stickers that were placed on the drug evidence by the agency.  Tr. Jan. 13, 2012, at 9:14-10:19.  Special Agent Kaighin testified that she went to the motel room on August 1, 2008.  Tr. Jan. 17, 2012, at 51:8-23.  She

further testified that, although she was present at room 224 during part of the search and collection of the evidence, she did not collect any of the evidence.  Tr. Jan. 17, 2012, at 65:16-22.

John Jermaine, the first chemist to receive the drug evidence, testified that he had no involvement in the collection of the drugs on August 1, 2008.  Tr. Jan. 13, 2012, at 182:18-21.  However, Chemist Jermain testified that the laboratory received the drugs on Monday, August 4, 2008.  Tr. Jan. 13, 2012, at 174:21-175:20, 194:8-11.  He further testified that the "request for analysis form" that was submitted to the laboratory had a signature of the name "Beall" as the officer.  Tr. Jan. 13, 2012, at 188:16-189:21.  Chemist Jermain also identified several bar codes and labels on the drug evidence that were used to help establish the chain of custody while the drugs were with the agency that was requesting the drug analysis.  Tr. Jan. 13, 2012, at 173:23-174:9, 183:23-184:9, 190:6-193:23.  Chemist Jermain further stated that the drug evidence that he reviewed at the lab contained a "white rock-type substance," "six baggies," and "67 small baggies," which is consistent with the items that were identified on Officer White's search warrant receipt.  Tr. Jan. 13, 2012, at 178:10-14, 179:18, 180:10.

Special Agent Kaighin later testified that she took custody of the drugs for the Bureau of Alcohol Tobacco Firearms and Explosives on August 26, 2008.  Tr. Jan. 17, 2012, at 59:1-5, 69:1-70:24.  She further testified that she never had any control over the drugs between August 1, 2008, the date that the drugs were seized from room 224, and August 26, 2008, the date that she took custody of the drugs.  Tr. Jan. 17, 2012, at 70:10-71:21.  She took possession of the drugs on August 26, 2008 because the case was previously a state case, but was accepted for federal prosecution "somewhere after that date and in between that date."  Tr. Jan. 17, 2012, at 73:20-74:1.

DEA Chemist Pauline Orlando also testified that she analyzed the drugs on

1   Friday, October 17, 2008 and Monday, October 20, 2008.  Tr. Jan. 13, 2012, at

2   71:16-18, 79:3-80:14; 89:20-90:9.  Chemist Orlando also testified that the drug

3   evidence contained "six plastic bag[s]," "each of which contains off white

4   substance," and "67 knotted plastic bag corners," "[e]ach contained [an] off-white

5   rock-like substance."  Tr. Jan. 13, 2012, at 85:11-20, 87:15-24.  Chemist Orlando

6   also identified the drug evidence as a "white crystalline substance."  Tr. Jan. 13,

7   2012, at 93:22.  Her testimony is also consistent with the items that were listed in

8   Officer White's search warrant receipt.  Chemist Orlando analyzed the drug

9   evidence and ultimately concluded that the items seized were 52.8 grams of crack

10   cocaine and 6.8 grams of actual methamphetamine.  Tr. Jan. 13, 2012, at 74-77,

11   90-91.

12       For the foregoing reasons, the Court finds that the Government presented

13   sufficient evidence to establish the chain of custody of the drugs, as they relate to

14   Count One and Count Two.

15   **II.**    **Did the government fail to introduce evidence showing beyond a**

16        **reasonable doubt that Mr. Hiley was in actual or constructive**

17        **possession of drugs in room 224?**

18       For the Government to prove actual, or constructive possession, it must

19   show a sufficient nexus between Mr. Hiley and the controlled substances,

20   sufficient enough to support the inference that Mr. Hiley exercised dominion and

21   control over them.  *See United States v. Carrasco*, 257 F.3d 1045, 1049 (9th Cir.

22   2001).  The Government must prove beyond a reasonable doubt that Mr. Hiley

23   knew that the drugs were in the room, and that he had the power and intent to

24   exercise dominion and control over them.  *See United States v. Terry*, 911 F.2d

25   272, 278 (9th Cir. 1990).  Mere proximity to a controlled substance, or mere

26   presence at the location where the controlled substance is found, without more, is

27   insufficient to support a finding of constructive possession.  *Id.* at 279.

28

1    Whether Mr. Hiley was in possession of the controlled substances – either

2    actual or constructive – is an element of the offense under 21 U.S.C. § 841(a)(1)

3    that the Government had to prove beyond a reasonable doubt.  Mr. Hiley argues

4    that the only evidence that the Government presented of a possible nexus between

5    him and the drugs was his mere presence in the motel room.  Moreover, the only

6    witness who testified about Mr. Hiley's connection with room 224 was Officer

7    White.  Neither Officer Richard Everett nor Special Agent Kaighin saw Mr. Hiley

8    enter or leave room 224.  Mr. Hiley therefore argues that his mere presence in the

9    room is not sufficient to prove beyond a reasonable doubt that he actually or

10   constructively possessed any controlled substances that might have been in the

11   room.

12       Mr. Hiley argues that the Government also failed to introduce evidence that

13   he had exclusive control over the room, which was rented by his mother, Bobbie

14   Taylor.  Constructive possession requires dominion and control over the items in

15   question, which can be exclusive or joint.  *See Brothers v. United States*, 328 F.2d

16   151, 155 (9th Cir. 1964).  "When the government seeks to prove constructive

17   possession of contraband found in a jointly occupied location, it must present

18   additional evidence of the defendant's knowing dominion or control of the

19   contraband, besides the mere joint occupancy of the premises, in order to prove

20   the defendant's constructive possession."  *United States v. Moreland*, 665 F.3d

21   137, 150 (5th Cir. 2011).  Where there is joint occupancy, "mere control or

22   dominion over the place in which the contraband is found is not enough to

23   establish constructive possession."  *United States v. McKissick*, 204 F.3d 1282,

24   1291 (10th Cir. 2000) (citing *United States v. Mills,* 29 F.3d 545, 549 (10th

25   Cir.1994)).  The Government must present evidence of knowing dominion and

26   control in joint-occupancy situations where drugs are completely hidden from

27   view.  *United States v. Harris*, 515 F.3d 1307, 1310 (D.C. Cir. 2008); *see also*

28

1    *United States v. Bonham*, 477 F.2d 1137, 1139 (3d Cir. 1973) (en banc) (finding

2    evidence insufficient where there was "nothing except the joint occupancy of the

3    room upon which an inference of possession could be based"). In addition, Fred

4    Roberts, the government's expert witness, testified that none of the items found in

5    room 224 were examined for fingerprints in 2008. Tr. Jan. 17, 2012, at 35:9-36:4.

6    Therefore, no fingerprint evidence linked Mr. Hiley to any of the items found in

7    room 224.

8           The Government contends that it did not argue that Mr. Hiley had physical

9    control of the drugs. Rather, it argued that Mr. Hiley knew of the drugs and the

10   firearm's presence in room 224 and had the power and intention to control both

11   the drugs and firearm. (Government's Opposition to Defendant's Motion for

12   Judgment of Acquittal and Motion for New Trial ("Govt.'s Opp'n") at 16:12-

13   17:25.) The Government argues that it offered sufficient evidence in support of

14   this element, such as:

15   - Mr. Hiley entered the motel room at about 10:10 a.m., had a visitor in less

16     than two minutes after his arrival, opened the door for his visitor, and the

17     visitor did not knock on the door or use a key to enter the room;

18   - Detective Fleming testified that drug transactions can take less than two

19     minutes, and Mr. Hiley's visitor left less than two minutes later;

20   - Mr. Hiley remained in the room by himself for almost ten minutes after his

21     visitor left;

22   - Officers found the drugs later that day and no one else had entered or exited

23     the room after Mr. Hiley left;

24   - The officers never saw anyone else enter or exit room 224 besides Mr.

25     Hiley and his visitor on August 1, 2008, including in their review of the

26     surveillance video;

27

28

- An empty bottle of Viagra prescribed to "Virgil Taylor" was found in the motel room, as were men's clothing and size 10 shoes;
- The officers did not find any evidence in the room that Mr. Hiley's mother was staying there;
- A digital scale, plastic baggies, chair, and nightstand were out in plain view, and were setup for a dealer to sell drugs in the small room;
- Detective Fleming testified that drug dealers use aliases and sometimes female family members' names to avoid law enforcement; and,
- Mr. Hiley's parole status gave him an additional motive to use his mother's name for the motel room because his property could be searched at any time.

During oral argument, the Government conceded that the drugs were "contained within" the nightstand and were not "readily apparent" when the officers walked into the motel room. The drugs were not discovered until after the officers entered the motel room and conducted a search. However, the Government argued that, given the way that the motel room was set up like a "store front" or "working table desk," the digital scale and plastic baggies that were on the nightstand, and the fact that Mr. Hiley was in the room by himself, a reasonable trier of fact could infer that Mr. Hiley saw what was inside of the nightstand, as well as the additional crack cocaine that was on the shelf of the nightstand.

Where the premises are shared, and the facts do not point to one person's direct control and knowledge, the Ninth Circuit has not found constructive possession of narcotics. *Delgado v. United States*, 327 F.2d 641, 642 (9th Cir. 1964). In *Delgado v. United States*, marijuana was found in the drawer of a nightstand in a living space shared by Delgado and Rodriguez. *Id.* at 641. There, the court held that it was "pure speculation" whether either Rodriguez or Delgado

had possession of the narcotics and therefore constructive possession could not be found. *Id.* at 642. The court further held that "[i]t is fundamental to our system of criminal law that guilt is individual." *Id.*

"If the defendant has exclusive control over the premises where contraband is found, then knowledge and control may be inferred." *United States v. Rodriguez*, 761 F.2d 1339, 1341 (9th Cir. 1985).However, in *United States v. Rodriguez*, the court held that mere presence was not sufficient to show constructive possession. *Id.* at 1340. Rodriguez was lying on the bed of the motel room while West, who was with Rodriguez in the room, was being questioned by officers regarding a robbery next door. *Id.* West was attempting to "cover up" evidence of counterfeiting activity while she answered the officers' questions. *Id.* at 1340. Therefore, the court found the act of trying to "cover up" was constructive possession. *Id.* at 1341. In reasoning why Rodriguez was not culpable, the court explained that:

> [Rodriguez's] only demonstrated connection with the contraband was his presence in the room. There is no showing that Rodriguez had rented the room or that anything in the room belonged to him; no other evidence was presented from which it could be inferred that he was in any way connected to the contraband other than his ability to observe it. The government failed to prove possession.

*United States v. Rodriguez*, 761 F.2d 1339, 1341 (9th Cir. 1985).

In contrast, in *United States v. Castillo*, contraband was found in plain view in a bedroom, and the court found that Castillo had control of the room. *United States v. Castillo*, 866 F.2d 1071, 1088 (9th Cir. 1988). Castillo was found in a locked bedroom in a home where the police were conducting a protective sweep, and cocaine was on top of a dresser in the room. *Id.* at 1074. The court found that, when viewed in the light most favorable to the Government, the evidence "demonstrated more than his mere presence at the apartment as a casual invitee." *Id.* at 1088. The court held that this was "sufficient to demonstrate knowledge and

1  [Castillo's] dominion and control of all the narcotics found in the bedroom." *Id.*

2      Here, Officer White testified that room 224 was registered to Mr. Hiley's

3  mother, Bobbie Taylor. Tr. Jan. 13, 2012, at 10:20-13:1. The Knights Inn

4  Motel's security video is only a thirty-minute video that shows between

5  approximately 10 and 10:30 a.m. on August 1, 2008, and does not capture who

6  may have entered the motel room prior to that time. Tr. Jan. 13, 2012, at 19:15-

7  22:4. In addition, there is no evidence about whether anyone else entered or

8  exited the room after Mr. Hiley left the room. Tr. Jan. 13, 2012, at 13:9-12.

9      A dispatch call from Officer Beall was received into evidence and played

10  for the jury during the trial. Officer White testified that the dispatch call was

11  Officer Beall stating that he was going to "keep eyes on the door." Tr. Jan. 13,

12  2012, at 57:1-58:14. Officer White testified that he later "relieved" Officer Beall

13  from the location where he was watching the door of the motel room. Tr. Jan. 13,

14  2012, at 57:21-22. However, Officer White also testified that he did not know

15  what time Officer Beall arrived at the location to observe the door. Tr. Jan. 13,

16  2012, at 58:12-14.

17      Although some items were found in the motel room, including an empty

18  prescription bottle bearing the name "Taylor, Virgil" and men's clothing, none of

19  the contraband was found near those items. Tr. Jan. 12, 2012, at 227:10-229:13.

20  No contraband was visible to Officer White upon entering the room, as the only

21  items that were visible were the digital scale and the plastic baggies. Tr. Jan. 12,

22  2012, at 212:6-20. A chair was facing the nightstand. Tr. Jan. 12, 2012, at

23  215:21-216:7. All of the drugs were found inside the drawer of the nightstand,

24  with the exception of a small amount of "off-white substance" that was found on

25  the lower shelf of the nightstand. Tr. Jan. 12, 2012, at 216:8-217:7. The

26  prescription bottle was found on the bathroom counter of the motel room. Tr. Jan.

27  12, 2012, at 227:18-228:1. The Government did not provide any evidence

28

1   regarding where the men's clothing was located.  The evidence presented is

2   therefore insufficient to prove beyond a reasonable doubt that Mr. Hiley had

3   actual or constructive possession of the drugs found in room 224.  Mr. Hiley was

4   not found present with the drugs, nor were the drugs in plain view.  *See United*

5   *States v. Castillo*, 866 F.2d 1071, 1088 (9th Cir. 1988).  In addition, the

6   Government offered no direct evidence connecting Mr. Hiley to the drugs.  *See*

7   *United States v. Rodriguez*, 761 F.2d 1339, 1341 (9th Cir. 1985).

8         The Government argues that the Court may consider evidence from the

9   defense case and the Government's rebuttal because Mr. Hiley elected to present

10  evidence on his behalf after the Court immediately denied his Rule 29 motion.

11  Govt.'s Opp'n at 3 n.2; *see United States v. Cruz,* 554 F.3d 840, 844 n.4 (9th Cir.

12  2009) (quoting *United States v. Alexander,* 48 F.3d 1477, 1490 n.10 (9th Cir.

13  1995)).  However, Mr. Hiley's renewed motion for judgment of acquittal requests

14  that the Court only consider the evidence offered at the close of the Government's

15  case-in-chief.  The Court will therefore exercise its discretion to rule on the

16  motion that is before it by only considering the evidence offered at the close of the

17  Government's case-in-chief.

18        However, should the Court consider evidence from the defense case and the

19  Government's rebuttal, the Court finds the evidence to be insufficient to prove

20  beyond a reasonable doubt that Mr. Hiley had actual or constructive possession

21  over the drugs found in room 224.  Mr. Hiley testified that a man by the name of

22  "Brett Cadell" was staying in the motel room with his mother.  Tr. Jan. 17, 2012,

23  at 153:18-154:7.  Mr. Hiley also testified that he had seen Brett Cadell at the motel

24  earlier during the week of August 1, 2008.  Tr. Jan. 17, 2012, at 154:8-13, 171:11-

25  17, 177:5-12.  Ms. Taylor also testified that she had a friend by the name of "Brett

26  Cadell" who came over to the motel room.  Tr. Jan. 18, 2012, at 9:18-10:4, 11:19-

27  21, 26:8-28:6.  Such evidence demonstrates that a third person, Brett Cadell, may

28

have had access to motel room 224.  The Government's rebuttal case consisted of the testimony of Special Agent Kaighin and Darwin Neidlinger, a Supervising Behavioral Health Specialist for the Riverside County Department of Mental Health Substance Abuse Program.  Tr. Jan. 18, 2012, at 43:18-46:20, 57:19-62:23. However, the testimony of the witnesses does not address the items that were found in motel room 224.  *Id.*

For the foregoing reasons, the Court finds that the Government failed to present sufficient evidence for the jury to find beyond a reasonable doubt that Mr. Hiley was in actual or constructive possession of the drugs found in room 224. The Court therefore finds that no rational trier of fact could have found the essential elements of possession beyond a reasonable doubt.  Mere speculation, rather than reasonable inferences, supports the Government's case that Mr. Hiley possessed the drugs found in room 224.

**III.   Did the government fail to present sufficient evidence to show beyond a reasonable doubt that Mr. Hiley knowingly possessed the firearm in furtherance of drug trafficking or that Mr. Hiley knowingly possessed any ammunition?**

Mr. Hiley argues that the Government also failed to provide evidence proving any connection between him, the weapon, and the ammunition found in room 224 beyond a reasonable doubt.  The only evidence that the Government introduced to prove the element of "in furtherance of a drug trafficking crime" was the opinion testimony of the Government's expert witness, Joseph Fleming. Mr. Hiley argues that Detective Fleming's testimony was merely opinion testimony that drug traffickers are often armed.  Therefore, Detective Fleming's opinion that the firearm was in furtherance of a drug trafficking crime was entirely based on the existence of the firearm in close proximity to the location where a controlled substance was found.

The Government concedes that it relied exclusively on the expert testimony of Detective Fleming to establish that the handgun was used in furtherance of a drug trafficking crime.  Govt.'s Opp'n at 19:16-24.  However, the Government argues that the expert testimony supports that conclusion.  The Government argues that the following evidence supports a conclusion that Mr. Hiley used the loaded handgun in furtherance of a drug trafficking crime:

- Detective Fleming testified how drug transactions can take less than two minutes, Mr. Hiley's visitor arrived shortly after Defendant entered room 224, and Mr. Hiley's visitor left less than two minutes later;

- In the small motel room, the chair and nightstand were set up for a dealer to sit down, weigh, package, and sell drugs;

- Detective Fleming testified how guns are kept near the drugs being sold to prevent the dealer from being robbed, the drugs were found in the drawer of the nightstand directly above the handgun on the base of the nightstand, and the nightstand had items of substantial value, namely $1,555 in cash, which is consistent with street level dealing, and approximately $2,000 worth of crack cocaine and $300 worth of methamphetamine;

- Detective Fleming testified how drug dealers operating out of motel rooms do not allow visitors to enter their rooms without them being present;

- Detective Fleming testified how motel room drug dealers do not keep guns in plain view because a motel employee may see the guns and contact law enforcement;

- Detective Fleming testified that drug dealers keep the handgun accessible when they are selling drugs;

- Detective Fleming testified that drug dealers generally keep unregistered guns to avoid law enforcement, and Special Agent Kaighin learned that the

gun found in room 224 was not registered nor was a gun trace conclusive; and,

- Detective Fleming testified drug dealers generally possess weapons to protect the motel rooms where they deal drugs.

Govt.'s Opp'n at 18:14-19:15.

Both parties also cite to the case of *United States v. Terry*, 911 F.2d 272 (9th Cir. 1990). In situations where the premises are shared by more than one person, "the Ninth Circuit has found that if a party has knowledge of the weapon and both the power and the intention to exercise dominion and control over it, then he has constructive possession." *United States v. Terry*, 911 F.2d 272, 278 (9th Cir. 1990) (citing *United States v. Cousins,* 427 F.2d 382, 384 (9th Cir. 1970)). However, the demonstration of mere presence or proximity to the contraband is "insufficient to establish constructive possession." *Terry*, 911 F.2d at 279 (quoting *United States v. Castillo,* 866 F.2d 1071, 1086 (9th Cir.1988)). Therefore there must also be a demonstration of power and intention to control the contraband. *Id.* at 280. "A person may not be convicted of illegal possession unless he knows contraband is present and is capable of exercising dominion and control over the contraband." *Id.* (internal quotations and citations omitted).

In *United States v. Terry*, the sole occupants of the room where the firearm was found were Terry and his wife. *Id.* at 278. The Ninth Circuit held that "a rational trier of fact could find that Terry's knowledge of the gun's location and his unhindered access to it whenever his wife was not observing gave him constructive possession of the weapon." *Id.* at 278. On the basis of the evidence, if a rational trier of fact could determine that the defendant had knowledge of the firearm, and ability to access it, there is constructive possession. *Id.*

It is not enough that Mr. Hiley has the power to control the firearm, in the sense that he simply is in the presence of the firearm and could reach out and take

1    it.  *See United States v. Terry*, 911 F.2d 272, 280 (9th Cir. 1990).  Although Mr.

2    Hiley had access to the motel room, the Government has failed to prove that he

3    had the power and intent to exercise dominion and control over the nightstand

4    containing the firearm.  The firearm in question was found wrapped in a piece of

5    fabric, inside of a closed shoe box, at the bottom of the nightstand.  Tr. Jan. 12,

6    2012, at 219:12-220:7.  Five live rounds of ammunition were loaded in the

7    firearm.  Tr. Jan. 12, 2012, at 220:15-17.  Neither the firearm nor the ammunition

8    was visible upon entering the motel room.  Mr. Hiley was not the sole occupant of

9    the motel room, nor was the motel room registered under his name.  There is no

10   evidence about who the other person was who entered the motel room subsequent

11   to Mr. Hiley, or evidence about who may have entered or left the room prior to

12   10:00 a.m., the time that Mr. Hiley appeared on the Knights Inn Motel's security

13   camera.  Gov't.'s Opp'n, Ex. 3 at 141:12-17.

14          For the foregoing reasons, the Court finds that the Government failed to

15   present sufficient evidence for the jury to find beyond a reasonable doubt that Mr.

16   Hiley knowingly possessed the firearm in furtherance of a drug trafficking crime,

17   or that Mr. Hiley knowingly possessed the ammunition.  The facts of this case

18   demonstrate that Mr. Hiley did not have actual or constructive possession of the

19   firearm beyond a reasonable doubt.  No rational trier of fact could have found the

20   essential elements of possession of a firearm in furtherance of a drug trafficking

21   crime beyond a reasonable doubt.  Mere speculation, rather than reasonable

22   inferences, supports the Government's case that Mr. Hiley possessed the firearm

23   and ammunition found in room 224.

24   **IV.    Should the Court grant a new trial because allowing the Government to**

25          **introduce evidence of Mr. Hiley's parole status in its case-in-chief was**

26          **unfairly prejudicial?**

27          Over the objection of the defense, the Court granted the Government's

28

motion to introduce Mr. Hiley's parole status in its case-in-chief.  Tr. Jan. 12, 2012, at 16:1-12.  The Government argued that Mr. Hiley's parole status demonstrated that he had motive to use a motel room under an alias in order to hide his drug trafficking activities.  The Court admitted Mr. Hiley's parole status as evidence of motive.  Tr. Jan. 12, 2012, at 13-16.  The Court also read the jury a limiting instruction, and the Government read a stipulation, regarding Mr. Hiley's parole status on January 13, 2012.  Tr. Jan. 13, 2012, at 5-7.

Mr. Hiley argues that his parole status was essentially evidence of prior crimes, wrongs, or other acts pursuant to Rule 404(b) of the Federal Rules of Evidence.  The analysis of 404(b) evidence requires a showing that the prior act evidence: "(1) tends to prove a material point; (2) is not too remote in time; (3) is based upon sufficient evidence; and, (4) in some cases, is similar to the offense charged."  *United States v. Lozano*, 623 F.3d 1055, 1059 (9th Cir. 2010) (quoting *United States v. Banks*, 514 F.3d 959, 976 (9th Cir. 2008)).  Relevant evidence is excluded "if its probative value is substantially outweighed by the danger of … unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Fed. R. Evid. 403.

Mr. Hiley argues that the danger of admitting his parole status was clear – the status itself is evidence that he had been convicted of a prior crime.  *See Untied States v. Neill*, 166 F.3d 943, 946 (9th Cir. 1999) (recognizing unfair prejudice of evidence of prior convictions and status of defendant on work release); *see also Smith v. City of Oakland*, 538 F. Supp. 2d 1217, 1232 (N.D. Cal. 2008) (Chen, Mag. J.) (finding evidence about defendant's post-conviction parole violation unfairly prejudicial "since the jury could have construed that parole violation as character evidence in violation of Federal Rule of Evidence 404(b)").  The unfairly prejudicial effect of Mr. Hiley's parole status is only lessened when the "jury already knows of the defendant's criminal history."  *See United States v.*

1    *Griffin*, 389 F.3d 1100, 1104 (10th Cir. 2004).  Mr. Hiley further argues that the

2    Government introduced his parole status before any evidence of his prior

3    conviction.  He further argues that this heightens its prejudicial effect, as it

4    demonstrates his criminal history.  Mr. Hiley argues that the jury was tainted by

5    the fact that he was a convicted felon and, therefore, convicted him because of a

6    character propensity instead of on the basis of the evidence adduced at trial.

7        In contrast, the Government argues that the Court properly admitted the

8    evidence.  In addition, any prejudice was reduced because the jury was already

9    aware of Mr. Hiley's felon status due to the felon-in-possession charge, as the

10   Government read the Second Superseding Indictment during the jury selection

11   process.  Tr. Jan. 10, 2012, at 43:11-22.  The Government further argues that the

12   Court provided a limiting instruction as to the use of the parole status evidence.

13   [Court's Instruction No. 23, Docket No. 213.][2]  The Government also cites several

14   circuit cases to support its argument that evidence of parole status is permitted to

15   explain a defendant's knowledge of an illegal scheme and the defendant's motive

16   for limiting his criminal exposure.  *United States v. Manarite,* 44 F.3d 1407, 1418

17   (9th Cir. 1995) ("The explanation [for why the defendant sent others to carry out

18   some of the crimes] was that his parole status subjected him to police scrutiny and

19   the risk of greater punishment if caught."); *United States v. Cruz*, 326 F.3d 392,

20   395 (3d Cir. 2003) (affirming the admission of parole status to show why

21   defendant delegated hand-to-hand street transactions to others).

22       Here, any prejudice to Mr. Hiley was mitigated because the jury was

23   already made aware of Mr. Hiley's felon status during the jury selection process,

24   at which time the Government read Count Four of the Second Superseding

25   Indictment, which stated that Mr. Hiley had been convicted of a felony punishable

26

27   ────────────────
     [2] "You have heard evidence about the defendant's parole status.  You may consider this evidence only for its
     bearing, if any, on the question of the defendant's intent, motive, opportunity, preparation, plan, knowledge,
28   identity, absence of mistake, or absence of accident and for no other purpose."  [Court's Instruction 23, Docket No.
     213]; *see also* Tr. Jan. 19, 2012, at 19:11-16.

by a term of imprisonment exceeding one year.  Tr. Jan. 10, 2012, at 43:11-22.
Any unfair prejudice from admitting into evidence defendant's parole status was
further mitigated because, on the first day of trial, the Government read a
stipulation that Mr. Hiley was convicted of a crime punishable by imprisonment
for a term exceeding one year on January 31, 2006.  Tr. Jan. 12, 2012, at 222:12-
22.  [Stipulation Re: Defendant's Prior Felony Convictions, Docket No. 172; *see
also* Court's Instruction No. 21, Docket No. 213.][3]  Mr. Hiley was on parole as a
result of the 2006 conviction.  Mr. Hiley also testified and admitted to two felony
drug trafficking convictions in 2003 and 2006.  Tr. Jan. 17, 2012, at 157-58;
[Court's Instruction No. 20, Docket No. 213.][4]  Any unfair prejudice was also
mitigated by the Court's giving of a limiting instruction about his two prior
convictions, instructing the jury to only consider the evidence for the purpose for
which it was introduced.  *See Huddleston v. United States,* 485 U.S. 681, 691-92
(1988); *United States v. Boise,* 916 F.2d 497, 501-02 (9th Cir. 1990).

　　　For the foregoing reasons, the Court finds that the Government's
introduction of evidence of Mr. Hiley's parole status in its case-in-chief was not
unfairly prejudicial.

## CONCLUSION

　　　The Court finds that the Government failed to present sufficient evidence
for the jury to find, beyond a reasonable doubt, that Mr. Hiley was in actual or
constructive possession of the drugs, firearm, or ammunition found in room 224 of
the Knights Inn Motel.  The Court further finds that the Government failed to

---

[3] "You have been read a stipulation that the parties entered regarding defendant's January 31, 2006, conviction.  I instruct you that the evidence of this conviction should only be considered as proof that at the time the five rounds of .380 caliber ammunition were found on August 1, 2008, the defendant had been convicted of a crime punishable by imprisonment for a term exceeding one year, as charged in Count Four of the second superseding indictment.  The evidence of his convictions should not be considered for any other purpose, except as instructed in the Court's Instruction No. 20."  [Court's Instruction No. 21, Docket No. 213]; *see also* Tr. Jan. 12, 2012, at 224:11-225:14.
[4] "You have heard evidence that the defendant has previously been convicted of crimes in 2003 and 2006.  You may consider that evidence only as it may affect the defendant's believability as a witness.  You may not consider a prior conviction as evidence of guilt of the crime for which the defendant is now on trial, except as instructed in the Court's Instruction No. 21."  [Court's Instruction No. 20, Docket No. 213]; *see also* Tr. Jan. 19, 2012, at 18:9-17.

1 | present sufficient evidence for the jury to find, beyond a reasonable doubt, that
2 | Mr. Hiley knowingly possessed the firearm found in room 224 of the Knights Inn
3 | Motel in furtherance of a drug trafficking crime.

4 |  For the foregoing reasons, the Court **grants** Mr. Hiley's motion for
5 | judgment of acquittal pursuant to Rule 29 of the Federal Rules of Criminal
6 | Procedure.  In the interest of justice, the Court conditionally **grants** a motion for
7 | new trial if this Court's judgment of acquittal is subsequently vacated or reversed.

9 | **IT IS SO ORDERED.**

Date: July 31, 2012               By _____
                                  HONORABLE CONSUELO B. MARSHALL
                                        United States District Court Judge